ROBINSON, Respondent, v. ST. LOUIS & SUBUR-
BAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 1, 1903.

1. **EVIDENCE: Expert Testimony.** In an action for personal in-
juries it was not error to permit the physicians, who attended
the plaintiff, to testify that the curvature of plaintiff's spine
was due to the injury, and that it would increase rather than
decrease.

2. ———: ———: In an action for personal injuries it was
competent to ask, on cross-examination of the physician
who was offered by defendant as an expert, if the phy-
sician who attended plaintiff was not in a better position
to form an opinion of the nature of the injuries than one who
must form his opinion on a mere hypothetical question.

3. **NEGLIGENCE:** Instructions: Degree of Care. In an action
for personal injuries to a passenger caused by a collision be-
tween the car on which plaintiff was riding and another of
defendant's cars, an instruction which told the jury the plain-
tiff was entitled to recover, "if the defendant's servants in
charge of its said car could have prevented said collision by
the exercise of a high degree of care, such as would have
been exercised by careful, skillful railroad employees under
the same and similar circumstances," correctly declared the
law.

4. ———: Collision: Prima Facie Evidence. A collision of
defendant's cars running in opposite directions on the same
track is prima facie evidence of negligence on the part
of the defendant, in an action for injuries caused thereby.

5. **DAMAGES: Loss of Business.** It was not error to instruct
the jury, in an action for personal injuries, that in assessing
plaintiff's damages they may take into consideration his loss
of earnings in business, where plaintiff testified that he was
in the racehorse business, buying, selling and training race-
horses at which he earned $10,000 a year, and that after his in-
jury he was obliged to hire a trainer, being unable to train the
horses himself.

Appeal from St. Louis City Circuit Court.—*Hon. John
A. Blevins,* Judge.

AFFIRMED.

*Dawson & Garvin* and *Leonard Wilcox* for appellant.

(1) Instruction No. 3 was erroneous in itself and was inconsistent with No. 2, given at request of defendant. Feary v. Railroad, 162 Mo. 101; Withing v. Orchard, 101 Mo. 640; Hadley v. Orchard, 77 Mo. App. 147; Wellite v. Rich, 142 Mass. 360; Hemsmann v. Hurd, 62 N. Y. 448. (2) The court erred in allowing Dr. J. W. Vaughn and Dr. W. W. Vaughn to answer the hypothetical questions asked them and in refusing to strike out the answer of the former, which stated that plaintiff's alleged condition as to being round-shouldered was due to the injuries alleged to have been received, and that the indications are that the condition will increase. State v. Taper, 148 Mo. 235; Hayberg v. Henske, 153 Mo. 75. (3) Instruction No. 4 was error because there was no proper allegation, nor competent evidence, of loss of earnings prior to the trial. Nor that there would be in the future, directly caused by the alleged injuries and because it assumed a disability to attend to business. Paquin v. Railroad, 90 Mo. App. 129; Pryor v. Railroad, 85 Mo. App. 368, 372; Ross v. Kansas City, 48 Mo. App. 449; Nixon v. Railroad, 41 Mo. 440; Goodheart v. Railroad, 177 Pa. St. 1; Masterson v. Mt. Vernon, 58 N. Y. 396.

*James M. Sutherland* for respondent.

Cited Malloy v. Railroad, 73 S. W. 159; Clark v. Railroad, 127 Mo. 197.

BLAND, P. J.—Plaintiff, on August 28, 1901, was a passenger on one of defendant's street cars which he had boarded for the purpose of being carried to the Kinloch race course, in the county of St. Louis. On the way there there was a head-end collision of the car on which plaintiff was a passenger and another one of defendant's cars, occasioned by the negligence of the defend-

ant's motorman in charge of the car on which plaintiff was a passenger, in failing to turn in on a switch to enable the other car to pass as required by the rules of the defendant company.  The motorman testified that the mistake was made on account of a lapse of his memory as to the switch he should take.

When the cars collided the plaintiff was thrown violently and with great force across the back of the seat in front of the one occupied by him, and was struck on the back by some object in the car.  The evidence is all one way that plaintiff was badly injured and that he suffered great pain, and paid out a considerable sum to physicians and nurses and for room rent in a hospital while being treated for the injury.  But there is a controversy as to the permanency of the injuries.  On the part of plaintiff the evidence shows that the injury caused him to turn gray; caused partial paralysis to his left leg, and that it is reduced in size, is weak, and caused him to walk with a halting and limping gait; that his spine has a curvature resulting from the injury, and that the curvature will increase rather than diminish on account of the manner in which plaintiff is compelled to walk, caused from the defect in his left leg.

On the part of the defendant the evidence tends to show that the plaintiff had entirely recovered from the injury and that at the trial he was simulating the curvature of his spine and the limp in his walk.

The jury found for plaintiff and assessed his damages at $2,500.  After saving exceptions in the usual way, defendant appealed.

Drs. J. W. and W. W. Vaughn, witnesses for the plaintiff, were permitted over the objection of defendant to testify that the curvature of plaintiff's spine was due to the injury and that it would increase rather than decrease on account of the weak condition of plaintiff's left leg.  Dr. J. W. Vaughn attended plaintiff and treated him for the injury.  Dr. W. W. Vaughn examined him while he was still confined to his bed and as-

sisted Dr. J. W. Vaughn to place him in a plaster of paris cast. They acquired an opinion of the nature and character of the injury from personal examinations of the injuries when they were fresh and from such examinations were qualified to give an intelligent opinion as to the effects already produced and that would probably ensue from the nature and character of the injuries. On the assumption that the plaintiff, prior to the injury, was straight and had no curvature, as he testified he was, we think it was competent for those physicians to testify that the stooped condition of plaintiff was caused by the injury.

Dr. Thompson testified as an expert for defendant. He was asked on cross-examination, if the physician who attended plaintiff was not in a better position to form an opinion of the nature and character of the injuries than one who must form his opinion on a mere hypothetical question? This question was objected to by defendant. The objection was overruled and defendant excepted. The ruling is assigned as error. It seems to us that the question answers itself: for it is self-evident that a physician who has seen, examined and treated a physical injury, if he is equally skilled, is better qualified by reason of his superior information to judge of the character and extent of the injury than one who must form his opinion from a mere verbal description of the injury, and we can not see how the defendant was prejudiced by the answer of Dr. Thompson to the question; for the same answer would naturally spring up in the mind of every juror, and a jury would so conclude without the question being asked.

Instructions numbered 1, 3, and 4, given for plaintiff are contended by defendant to be erroneous. They are as follows:

"1. If the jury find from the evidence in this case that the defendant on the 28th of August, 1901, was operating the cars mentioned in the evidence for the pur-

pose of carrying passengers for hire as a street railway; and if the jury further find from the evidence that the defendant by its servant in charge of one of said cars received plaintiff as a passenger thereon at or near Wells station to be carried as such passenger upon said car to a point on defendant's railroad at or near Kinloch race track in St. Louis county, Missouri, and that the plaintiff paid his fare as such passenger, and if the jury further find from the evidence in this case that whilst the plaintiff was such passenger on said car, being so carried to his point of destination aforesaid, and before he reached his said point of destination, the car in which he was such passenger was collided with by another of defendant's cars going the opposite direction on the same track and that thereby plaintiff was injured; then the defendant is liable in this case, if the defendant's servants in charge of its said car could have prevented said collision by the exercise of a high degree of care, such as would have been exercised by careful, skillful railroad employees under the same and similar circumstances.

"3. The jury are instructed by the court that if they believe from the evidence that plaintiff was a passenger lawfully on board of the defendant's street car at the time of the collision appearing in evidence, and received injuries therein, then the burden of proof is shifted upon the defendant to show to the satisfaction of the jury that said collision was caused through no negligence or carelessness of defendant's agents and unless it is so shown the jury should find a verdict for plaintiff.

"4. If the jury find for plaintiff they should assess his damages at such sum as they believe from the evidence will be a fair compensation to him, subject to the limitations of the other instructions given herein: (1) For any pain of body or mind which the plaintiff has suffered or will suffer by reason of his injuries and directly caused thereby. (2) For any loss of earnings from his business directly caused by his dis-

ability to attend to his business which the plaintiff has or will hereafter have sustained directly caused by his injuries. (3) For any expenses for medicine, nursing, medical or surgical attention which the plaintiff has necessarily incurred or will hereafter necessarily incur directly caused by the said injuries in seeking relief therefrom.''

In what particular numbers 1 and 3 are erroneous is not specifically pointed out by defendant. That they properly declared the law of the case, we have no doubt.

The collision of the cars running in opposite directions on the same track was prima facie evidence of defendant's negligence. When shown the burden was shifted on defendant to show by a preponderance of the evidence that the collision was not due to its fault. Malloy v. Railway, — Mo. —, 73 S. W. 159; Clark v. Railroad, 127 Mo. 197.

The objection to the fourth instruction is that it authorized damages for loss of earnings in business. The contention is that there is no evidence of such loss. We think the defendant misapprehends the evidence. Plaintiff testified he was in the racehorse business, buying and selling racehorses, training them and putting them on race tracks; that before the injury he did his own training, but after the injury he was not able to train his horses and had to hire and keep in his employ a trainer all the time; that his earnings had been ten thousand dollars per annum over and above any money he had made by bets on races. Hence, there was evidence of profits in his business and loss in those profits by being compelled to increase the expense of his business to the extent of hiring a special trainer.

It appears to us from all the evidence in the record that the plaintiff had a very meritorious case, and that it was tried without prejudicial error. The verdict is a moderate one in view of the severity and extent of the injury. The judgment is manifestly for the right party and is affirmed. *Goode* and *Reyburn, JJ.,* concur.