[Civil No. 2660.  Filed April 16, 1928.]

[266 Pac. 1.]

TREMAINE ALFALFA RANCH & MILLING COMPANY, a Corporation, Appellant, v. EMORY J. HURLEY, Appellee.

Messrs. Silverthorn & Van Spanckeren, for Appellant.

Mr. W. L. Barnum, for Appellee.

LOCKWOOD, J.—Emory J. Hurley, hereinafter called plaintiff, brought suit against Tremaine Alfalfa Ranch & Milling Company, a corporation, hereinafter called defendant, for damages alleged to have accrued through the illness and death of certain hogs sold by defendant to plaintiff. The case was tried to a jury, which returned a verdict in favor of plaintiff, and, after the usual preliminaries, an appeal was taken to this court.

There are but two assignments of error, which raise in effect but one question of law, to wit, does the evidence sustain the verdict? On assignments of this nature it is, of course, true that every reasonable conflict in the evidence appearing in the record must be resolved in favor of the plaintiff, and, if so doing there can be found in such record sufficient evidence to sustain the verdict, it must stand. *Gordon* v. *Brewer*, 21 Ariz. 402, 189 Pac. 243; *City of Bisbee* v. *Thomas*, 24 Ariz. 614, 212 Pac. 190; *Tovrea* v. *Yutich*,

24 Ariz. 41, 200 Pac. 595; *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868.

In order to answer the question correctly, it is necessary that we should first state the substance of the complaint and answer and then discuss briefly certain phases of the evidence. Substantially speaking, and omitting all formal matters, the complaint is as follows:

About the 17th of January, 1926, plaintiff purchased from defendant 226 head of feeder hogs, paying therefor $2,112. At the time of the purchase, defendant represented that all of the hogs were healthy, free from disease or infection of every kind and nature; that they had not been exposed to any disease or infection for a period of thirty days prior to the date of the purchase; that defendant had lost no hogs by death or otherwise during that period; that all of the hogs so purchased had been treated by defendant for cholera and other infection by the process or treatment known as "triple treatment," and that plaintiff, relying upon each and all of said representations, purchased the hogs. It is further alleged that all of such representations were false, and known to the defendant to be false at the time of the sale, and that immediately after the delivery of the hogs to the plaintiff a large number became sick with cholera and hemorrhagic septicemia, and 137 head thereof, of the value of $1,279.58, died; and that, in order to save the remainder, plaintiff was compelled to expend $264.55 for medicine and labor in connection with their treatment.

The answer, in substance, denies the alleged representations, and, as an affirmative defense, sets up that plaintiff knew there had previously been an outbreak of cholera and mixed infection among defendant's hogs but that the ones purchased had been vaccinated therefor. There was further an allegation that defendant had been advised by competent

authority that it was safe and proper to sell the hogs, and defendant sold them under such belief.

There has been before this court quite recently another case involving a sale by defendant of hogs alleged to have been infected with cholera or septicemia. In that case we laid down the law governing actions of this nature as follows:

"The case is based upon fraud and deceit, and to sustain such an action it is necessary, first, that the representation by appellant that the hogs were not affected with cholera or had not been exposed to it was made as a statement of fact; second, that it was untrue; third, that it was known by the appellant to be untrue, or made in reckless disregard of its truth; fourth, that it was made with intent to deceive appellee and induce him to act upon it; and, fifth, that he did rely upon it and act thereon to his injury." *Tremaine Alfalfa Ranch & Milling Co.* v. *Carmichael,* 32 Ariz. 457, 259 Pac. 884.

Substituting the representations set up in the complaint herein for the ones in the case cited, the quotation states the facts necessary to be proved by plaintiff in this case. Does the record show such proof?

The testimony of plaintiff himself is specific that, when the purchase of the hogs was being negotiated, his brother suggested that they should be put under observation for disease; that defendant's manager thereupon said that they had not lost a hog in thirty days, and had had no trouble of any kind, and that they had been triple treated and immunized; his brother still urged that the hogs should be observed, and plaintiff stated to him in the presence of defendant's manager:

"These people's word is good. They haven't had no trouble, and they are guaranteeing they were triple treated. We will accept them as they are."

This testimony was fully sustained by plaintiff's brother, and we think is ample as to what the repre-

sentations were, and that plaintiff acted upon such representations. The evidence of defendant's own witnesses shows that during the month of November, 1926, a large number of defendant's hogs were suffering from hog cholera, and that many of them died of that disease, and that, in order to check it, at the request of defendant the state veterinarian gave them what is known as the anti-hog-cholera serum and mixed infection treatment, but did not give them what is called the triple treatment, nor was the latter ever administered. The testimony as to the purpose and value of the treatment actually given as compared with the one represented to have been given is that the one actually given confers a temporary immunity from hog cholera of from thirty to ninety days, while the other gives permanent immunity. The state veterinarian gave the reasons why he chose the one treatment rather than the other, and we cannot say that under the particular circumstances of the case his judgment was not justified. The fact nevertheless remains that the representation made was of a very different treatment, and of one which, if successful, would have produced a very different result from the one actually administered.

It further appears from the evidence that from the time the state veterinarian began his first treatment and continuously up to the time of the purchase by plaintiff, defendant had been losing a number of hogs, and that, almost immediately after plaintiff bought the hogs, cholera did develop, and he lost hogs to the number and of the value stated by him, and spent money in treatment of the amount claimed in the complaint. It is true that a great deal of this testimony was contradicted by defendant's witnesses, but the conflict of testimony was a matter for the jury, and by their verdict it was resolved, as they had a right to resolve it, in favor of plaintiff.

We think the evidence above summarized justified the jury in finding, first, that defendant had represented that the hogs had not been exposed to hog cholera, and that they had received the triple treatment, which, if successful, gave permanent immunity from cholera; second, that such statement was untrue; third, that it was known to defendant to be untrue; fourth, that it was made with the intent to deceive plaintiff and to induce him to act upon it; and, fifth, that he did rely upon it and act thereon to his injury.

Such being the case, the essential allegations of the complaint and the requirements of the law in an action of this kind were sustained by the evidence, and the judgment must be affirmed. It is so ordered.

ROSS, C. J., and McALISTER, J., concur.