[Civil No. 1117.    Filed April 2, 1910.]

[108 Pac. 253.]

FELIX MAYHEW, Defendant and Appellant, v. D. J. BRISLIN, Plaintiff and Appellee.

1. EVIDENCE—CONCLUSION OF WITNESS—MATTER DIRECTLY IN ISSUE— SALE OF REAL ESTATE.—In an action for services as a middleman in effecting an option contract of sale of mining property, it was not error to allow plaintiff to testify, in answer to a question as to what he understood defendant to mean by saying that he would make it all right, that he understood that he was to get the usual commission on the purchase price of the property, since it was proper that the *private understanding of the promisee* be placed before the jury, not for the purpose of enforcing such understanding, but to aid the jury in determining the sense in which the words were used, and in finding whether the parties came to an agreement in accord with the private understanding of the plaintiff.

2. PLEADING—EXHIBITS—CONTRACTS ATTACHED TO COMPLAINT—MATERI- ALITY.—Where the complaint alleged the performance of a contract by plaintiff, and that a "deal" was effected in the manner and form set forth in certain contracts, copies of which were attached as exhibits thereto, the contracts were *material evidence* to show an essential element of the plaintiff's case, namely, that a "deal" was effected.

3. BROKERS—MIDDLEMAN—OPTIONAL SALE—EVIDENCE.—In an action for services as a middleman in effecting an optional contract of sale of mining property, evidence that certain amounts of money had been paid on the purchase price of the mining claims subsequent to the giving of the option and to the commencement of the action was properly admitted as tending to afford a basis for determining the amount of plaintiff's compensation.

4. BROKERS—COMPENSATION—WHEN ENTITLED—OPTIONAL CONTRACT.—A real estate broker's contract is completed, and he is entitled to compensation, even though he be employed for the purpose of sale, when he has introduced a purchaser and his principal chooses to

waive that requirement and enters into an optional contract. In such cases the courts allow him compensation upon the basis of the amount paid.

5. BROKERS—COMPENSATION—HOW MEASURED.—The compensation to be made to a real estate broker is by the ordinary judgment of business men measured by the results shown, and is not limited by the time occupied or the labor bestowed.

6. APPEAL AND ERROR—ASSIGNMENT NOT ARGUED IN BRIEF—REVIEW.—An assignment of error not argued in the brief will not be considered on appeal.

7. EVIDENCE — HYPOTHETICAL QUESTIONS — CROSS-EXAMINATION.—There must be evidence of the material facts assumed in a hypothetical question before an answer thereto may be permitted, and this rule applies to cross-examination, where the question purports to relate to the specific facts of the case, and is asked for the purpose of eliciting an answer as to the value of services rendered.

8. APPEAL AND ERROR—RECORD—MOTION FOR NEW TRIAL—REVIEW.—Where the record shows that the motion for new trial failed to allege error in ruling on instruction, assignments of error based thereon cannot be considered on appeal.

9. APPEAL AND ERROR—NEW TRIAL—EVIDENCE.—The supreme court will not grant new trial upon the ground that the evidence does not sustain the verdict, where there is any substantial evidence in the record to support the verdict.

APPEAL from a judgment of the District Court of the First Judicial District, in and for Yuma County. Edward Kent, Judge. Affirmed.

The facts are stated in the opinion.

Peter J. Robertson, Eugene S. Ives, and S. L. Pattee, for Appellant.

"Any act or declaration of either party connected with the transaction, whether prior or subsequent thereto, may be given in evidence in order to show what the agreement was. A fact is then proved, from which a jury may infer the understanding or intention of the parties; but the mere impression or understanding of one of the parties, not communicated to the other, can never justify the inference that the understanding of the other party was the same, and in order to constitute a contract or agreement, the assent of both parties is requisite. It would be a most dangerous relaxation of the rules of evi-

dence.    There would be no possibility of convicting a witness
of perjury, on the ground of such evidence.    His understand-
ing of a transaction, if it may be called a fact, is one resting
entirely in his own mind, and which cannot be disproved.''
*Murray* v. *Bethune,* 1 Wend. (N. Y.) 191; *Nichols* v. *Ore Co.,*
56 N. Y. 618; *Slater* v. *Demorest Co.,* 94 Ga. 687, 21 S. E.
715; *First Nat. Bank* v. *Booth,* 102 Iowa, 333, 71 N. W. 238;
*Diehl* v. *State,* 157 Ind. 549, 62 N. E. 51.

Where a witness testified as an expert upon a hypothetical
question, great latitude should be allowed in cross-examination
of an expert witness in order to bring out the facts as to wit-
ness' competency as an expert.    8 Ency. of Pl. & Pr. 767.
And for the purpose of testing the skill, accuracy and knowl-
edge of the witness, the cross-examiner is not limited to facts
and theories founded in the evidence, but may cross-examine
on purely imaginary and abstract questions.    5 Ency. of Ev.
632.

Ross & O'Sullivan and Timmons & Baxter, for Appellee.

On an issue as to the terms of an oral agreement it has been
held proper to permit one of the parties thereto to state how
he understood the matter.    3 Ency. of Ev., pp. 5–20, citing
*Wheeler* v. *Campbell,* 68 Vt. 98, 34 Atl. 35; *Linsley* v. *Lovely,*
26 Vt. 123; *State* v. *Lockwood,* 58 Vt. 378, 3 Atl. 539.

The complaint set forth in detail the payments made under
the option secured by appellee.    The payments were proven,
and admitted by appellant, subject to objection as to their
competency.    There was no error here.    This was a suit on
a *quantum meruit.*    The compensation was not fixed by the
contract.    It was therefore competent to prove what was re-
ceived by appellant on the contract secured by the efforts and
labor of appellee, in order to enable the jury to arrive at a
verdict as to what appellee was entitled to.

''The compensation to be made in such cases is, by the ordi-
nary judgment of business men, measured by the results ob-
tained.    It is not limited by the time occupied or the labor
bestowed.''    *Forsyth* v. *Doolittle,* 120 U. S. 73–78, 7 Sup. Ct.
408, 30 L. Ed. 586.    See, also, *Morgan* v. *Keller,* 194 Mo. 663,
92 S. W. 77; *Glover* v. *Henderson,* 120 Mo. 367, 41 Am. St.
Rep. 695, 25 S. W. 178.

Where an assignment of error is not argued in appellant's brief it will not be considered by the supreme court. *Bail* v. *Hartman,* 9 Ariz. 321, 83 Pac. 358.

The supreme court cannot consider or review any error which would be cause for a new trial, unless a motion therefor, upon that ground, has been made to the court below, and the ruling properly assigned as error. This has been settled for all time by the supreme court of Arizona in the following cases: *Putnam* v. *Putnam,* 3 Ariz. 182, 24 Pac. 320; *Santa Rita etc. Co.* v. *Mercer,* 3 Ariz. 181, 73 Pac. 398; *Tietjen* v. *Snead,* 3 Ariz. 195, 24 Pac. 324; *Koons* v. *Ariz. Co.,* 3 Ariz. 204, 32 Pac. 266; *Miller* v. *Green,* 3 Ariz. 205, 73 Pac. 399; *Albuquerque Nat. Bank* v. *Stewart,* 3 Ariz. 293, 30 Pac. 303; *Evans* v. *Glencross,* 4 Ariz. 222, 36 Pac. 212; *Providence etc. Co.* v. *Marks,* 7 Ariz. 74, 60 Pac. 938; *Roy & Titcomb* v. *Flin,* 10 Ariz. 80, 85 Pac. 725.

"The appellate court will not grant a new trial on the ground that the verdict is contrary to the evidence, when the testimony is conflicting, and there is any evidence to support the verdict." *Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696; *Old Dominion etc. Co.* v. *Andrews,* 6 Ariz. 205, 56 Pac. 969; *Miller* v. *Green,* 3 Ariz. 205, 73 Pac. 399; *Barter* v. *County of Pima,* 2 Ariz. 88, 11 Pac. 62; *McGowan* v. *Sullivan,* 5 Ariz. 334, 52 Pac. 986.

LEWIS, J.—This was an action commenced by the plaintiff and appellee, D. J. Brislin, against the defendant and appellant, Felix Mayhew, to recover for services rendered by the plaintiff as middleman in effecting an optional contract of sale of certain mining properties in Yuma county, Arizona. A verdict in the sum of $2,000 was rendered against the defendant, upon which verdict judgment was duly entered. A motion for new trial was made, which was denied, and thereupon this appeal was taken.

The first and second assignments of error criticise the following rulings of the trial court: "Q. Now, Mr. Brislin, . . . what did you understand by his (the defendant's) remark to you at that time and place as you have testified to 'that he would make it all right with you'? (The defendant objects to the question as irrelevant and immaterial.) The Court: I think it would be competent for the witness to state what he

understood by it. It would be a matter for the jury to determine what the meaning was. I overrule the objection. Counsel: The defendant excepts to the ruling of the court. My objection is that it asks for a conclusion, and that it is incompetent and immaterial. A. My understanding was that I was to get the usual commission on the purchase price of the property. (The defendant moves the court to strike out the answer of the witness to the preceding question.) The Court: I deny the motion.'' The rulings of the trial court are correct. Wigmore says: ''Nevertheless, for two reasons it is usually necessary to inquire what the 'understanding' of each party was: First, because it may appear that both gave the same sense to the words, and thus no conflict will exist and the common sense may be accepted and enforced; and, secondly, because, if there is a conflict, the different senses must be examined. It thus appears that we must discriminate between enforcing the private 'understanding' of one party, and receiving evidence of such a private 'understanding.' Rulings of exclusions will usually or often mean in reality, not that the evidence should not be listened to, but that the private 'understanding' will not be enforced.'' Wigmore on Evidence (1904), sec. 1971, subd. ''a.'' This statement is applicable to the rulings here presented. The record disclosed that the appellant and appellee were friends, and that the appellee was not engaged regularly in the brokerage business. The expression used by the appellant ''that he would make it all right with him'' was not free from ambiguity. It might be a mere expression of generous intent or a definite promise of payment for services rendered. Hence it was proper that the private understanding of the promisee should be placed before the jury, not for the purpose of enforcing such understanding, but for the purpose of aiding the jury in determining the sense in which the words were used, and in finding whether the parties came to an agreement in accord with the private understanding of the appellee.

The third assignment of error is as to the ruling of the trial court admitting in evidence the complaint, together with the contracts annexed thereto. It is argued by appellant that the plaintiff had fulfilled his contract of employment prior to the making of said contracts and that they were incompetent and immaterial. The complaint alleges that the contract of em-

ployment required the plaintiff to act as a middleman for the purpose of negotiating a mining deal between the said defendant and R. K. Humphrey and Charles H. Fay upon terms and conditions to be fixed by said defendant, and that said defendant agreed to pay the plaintiff a reasonable compensation for said services. It further alleges the performance of the contract by the plaintiff, and that a ''deal'' was effected in the manner and form set forth in certain contracts, copies of which were attached as exhibits thereto. The record shows an expressed exclusion of the objection that the proffered evidence was incompetent, the sole objection being that the evidence was immaterial. These contracts were material to show an essential element of the plaintiff's case, namely, that a ''deal'' was effected. They related to the same deal, and the later contracts were but modifications of the earlier and informal memoranda of the agreement.

The fourth assignment of error relates to alleged error in admitting evidence that certain amounts of money had been paid on the purchase price of the mining claims subsequent to the giving of the option and to the commencement of the action. The rulings of the trial court upon the admission of the evidence complained of were made while the plaintiff was on his main case. The complaint, in addition to the contract of employment and the various optional contracts hereinabove referred to, alleged that under the said contracts the purchasers had paid $227,500 upon the purchase price of $300,000, and were able, ready, and willing to pay the remainder as the same became due, and that the full purchase price would be paid in accordance with the contract. The only direct evidence as to the contract of employment was that of the plaintiff, who stated ''that he was to get the usual commission on the purchase price of the property; that his understanding was that, if the deal fell through, he was not expecting anything.'' Without regard to the doctrine of multiple admissibility, which might be determinative of the question, we will consider the evidence as bearing, not upon the right of the plaintiff and appellee to compensation, but as tending to afford a basis for determining the amount of the compensation. This latter is the ground of objection argued by the appellant, who contends that the contract was fully performed when the appellee had brought the parties together, and they

had made a deal, and that the admission of evidence of payments to appellant of large sums after the completion of the deal and the commencement of the suit had an injurious effect and inevitable tendency to swell the amount which might otherwise have been awarded to the appellee. The appellant endeavors to distinguish btween the rules which should govern the admissibility of evidence as to the reasonable value of a broker's and middleman's services. He calls attention to the fact that a broker is only entitled to compensation upon effecting a sale, and that the purchase price is a proper basis for determining the value of his services because of the nature of the duty required. He urges that it is not so with the middleman, who has only occasion to introduce the parties, and whose compensation is nowise contingent upon the completion of a sale. This does not place the broker and middleman in different categories with respect to their compensation. A broker's employment may be to negotiate a contract other than that of sale, and in such case he is entitled to his compensation upon a showing that he is the efficient cause of the formation of a contract in accordance with the terms of his employment. He may be employed as well to effect a conditional or optional sale of a property as to effect a sale absolute, and would in either event be entitled to his commission. So with the middleman. He may be employed for divers purposes. His right to compensation accrues when he has performed his contract. The compensation of the middleman, like that of the broker, is usually contingent upon success. The results sought by the employer may differ, and the test of the admissibility of evidence may vary with the results sought. The amount of compensation to be allowed a broker may differ from that to be allowed a middleman, for the service demanded of the first may be, and generally is, greater than that demanded of the second. But we are now concerned, not with the amount of compensation, but with the evidence admissible to afford a basis for the determination of such amount. In this case the employment of the middleman was for the purpose of introducing certain parties, with whom the principal might effect a deal. Such deal was effected. The middleman's contract was thus consummated. So far the proof of the making of the optional contracts establishes one element of appellee's case. It does not, however, necessarily

furnish the measure of appellee's compensation. That may be an independent element. Under appellee's testimony, the compensation was contingent, not upon the effecting of a deal, but of a deal resulting in substantial benefit to appellant. This was not an unreasonable construction of the language used by the parties as applied to the facts in the case. *Hammond* v. *Crawford*, 66 Fed. 425, 14 C. C. A. 109.

No authority is cited by appellant holding the evidence inadmissible of which complaint is here made. We find no authority directly in point as to middlemen. The reasoning adopted in the more usual cases of the real estate broker is applicable. His contract is completed, and he is entitled to compensation, even though he be employed for the purposes of sale, when he has introduced a purchaser and his principal chooses to waive that requirement, and enters into an optional contract. The broker in such case is permitted to show that subsequent thereto the option has been exercised, and the courts allow him compensation upon the basis of the amount paid thereon. *Gilder* v. *Davis*, 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398. "The compensation to be made in such cases is by the ordinary judgment of business men measured by the results attained. It is not limited by the time occupied or the labor bestowed." *Forsyth* v. *Doolittle*, 120 U. S. 73–78, 7 Sup. Ct. 408, 30 L. Ed. 586; *Boardman* v. *Hanks* (1904), 185 Mass. 555, 70 N. E. 1012; *Blake* v. *Stump*, 73 Md. 160, 20 Atl. 788, 10 L. R. A. 103. There was no error in the rulings of the trial court in admitting the evidence complained of in this assignment.

The fifth assignment of error is not argued in appellant's brief, and we therefore give it no consideration. *Bail* v. *Hartman*, 9 Ariz. 321, 83 Pac. 358.

The sixth assignment of error relates to alleged error in the sustaining of an objection to a hypothetical question upon cross-examination addressed to a witness who had testified as to the value of the services rendered by appellee. The ruling was based upon the ground that there was no testimony tending to support the facts assumed in the question. There is a suggestion in the brief of appellants that the latitude allowed in the cross-examination of an expert witness should have permitted an answer because it would bear upon the witness' qualification to testify. This point is not seriously urged, and

examination of the record discloses that the question was not asked for that purpose. The question occurs at the conclusion of a rigorous cross-examination, and the sole value of an answer thereto would be to give an estimate of the value of the appellee's services if rendered under the facts assumed in the question. Without setting forth the question, it being somewhat long, it is sufficient to say that it contains elements of fact which were not in evidence. There must be evidence tending to prove the material facts assumed in a hypothetical question before an answer thereto may be permitted. This rule is not changed upon cross-examination where the question purports to relate to the specific facts of the case, and is asked for the purpose of eliciting an answer as to the value of the services rendered. *Nichols* v. *Oregon Short Line Ry. Co.,* 25 Utah, 240, 70 Pac. 996.

Assignments of error Nos. 7 to 13, inclusive, relate to the giving and refusing of instructions to the jury. The record discloses that the motion for new trial fails to allege error in the giving or the refusing of instructions. We therefore cannot consider these assignments. *Pickthall* v. *Steinfeld,* 12 Ariz. 230, 100 Pac. 779; *Steinfeld* v. *Pickthall,* 12 Ariz. 230, 100 Pac. 779; *Pringle* v. *King,* 9 Ariz. 76, 78 Pac. 367.

The fourteenth and fifteenth assignments of error relate to error in the overruling of motion for new trial, and raise questions already considered and disposed of under the other assignments of error.

Assignments 16 and 17 allege error in overruling the defendant's motion for new trial upon the grounds that the evidence does not sustain the verdict, and that the evidence does not sustain the judgment. We have examined the record, and find that there is some evidence in support of every allegation of the complaint essential to the verdict and judgment. This court will not grant a new trial upon the grounds alleged where there is any substantial evidence in the record to support the verdict and judgment. *Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696; *United States* v. *Copper Queen M. Co.,* 7 Ariz. 80, 60 Pac. 885; *Maricopa etc. Ry. Co.* v. *Dean,* 7 Ariz. 104, 60 Pac. 871; *Old Dominion etc. Co.* v. *Andrews,* 6 Ariz. 205, 56 Pac. 969; *McGowan* v. *Sullivan,* 5 Ariz. 334, 52 Pac. 986; *United States* v. *Chung Sing,* 4 Ariz. 217, 36 Pac. 205; *Miller* v. *Green,* 3 Ariz. 205, 73 Pac. 399; *Barter* v. *County of Pima,*

2 Ariz. 88, 11 Pac. 62; *Copper Queen M. Co.* v. *Arizona etc. Co.*, 2 Ariz. 10, 7 Pac. 718; *O'Toole* v. *Melander*, 2 Ariz. 392, 17 Pac. 564; *Tweed* v. *Lowe*, 1 Ariz. 488, 2 Pac. 757.

The judgment of the trial court is affirmed.

CAMPBELL and DOE, JJ., concur; DOAN, J., not sitting